MAURICE MEYER *v.* W. T. BLAKEMORE ET AL.

1. GUARANTY. *Discharge. Burden of proof.*
   The burden is on the defendant to prove a discharge pleaded by him to assumpsit on a guaranty.

2. SAME. *Cumulative security.*
   A contract by a third party with a surety on a replevin bond in attachment, to guarantee him against loss by reason of his suretyship, is not discharged, in the absence of an agreement, by such surety taking from his principal a mortgage on property supposed to be sufficient to cover the liability.

3. SAME. *Damages in assumpsit on the contract.*
   In such case the surety can recover from his guarantor his costs and counsel fees in defending the attachment suit, and expenditure in compromising a judgment on the bond, and, if he has foreclosed the mortgage, should credit only the net proceeds, after deducting the outlays in foreclosing.

4. SAME. *Bankruptcy of principal. Failure to prove claim.*
   The surety does not discharge such guarantor by failure to prove his claim against the general estate in bankruptcy of his principal on the bond.

5. SAME. *Release of cumulative security.*
   To the amount of the proceeds of personal property embraced in the mortgage abandoned by the surety to the assignee in bankruptcy of his principal, which might have been realized if he had pressed his claim, he loses recourse against his guarantor.

6. SAME. *Value of cumulative security.*
   The surety having no right to proceed upon the mortgage until actually damnified by payment of the money on the bond, his right of recovery on the guaranty is unaffected by the value of the mortgaged property at the time the mortgage was given.

7. GUARANTY. *Evidence. Relevancy.*

If the guarantor, when sued in assumpsit, introduces the bankruptcy record containing an order authorizing a composition, to show a discharge of the guaranty, it is relevant to prove in rebuttal that nothing was done under the order.

8. SAME. *Explanation of record.*

It is also relevant to explain in rebuttal why an attorney's fee as sued for is larger than as stated in the bankruptcy record.

9. EVIDENCE. *Admissions. Pleadings in another suit.*

The unsworn pleadings of a party are not evidence against him in another suit of the declarations therein contained in the language of counsel.

10. SAME. *Reference to writings to refresh memory.*

A witness who in his testimony has given a wrong date may refresh his memory by reference to his correspondence, and, being reintroduced, correct the error.

11. WITNESS. *Party. Conversation with one since deceased.*

Where a party to the suit testifies to a conversation on a material issue with one since deceased, it is not error to instruct the jury to be circumspect in considering the evidence, which is impossible, in the nature of things, to be disproved, and to give it the weight to which, in view of the interest of the party, and all the circumstances, they deem it fairly entitled.

12. INSTRUCTION. *Partial summary of evidence.*

It is proper to refuse a charge presenting a hypothetical case which does not embrace all the circumstances in evidence bearing on the subject.

ERROR to the Circuit Court of Warren County.

Hon. UPTON M. YOUNG, Judge.

This was assumpsit by the surviving partners of Blakemore Brothers & Co., merchants in New Orleans, against Maurice Meyer, of the late firm of Meyer & Kahn, of Vicksburg, on Meyer & Kahn's letter of Jan. 22, 1873, promising to indemnify Blakemore Brothers & Co. if they would become sureties on the replevin bond' of one Gallagher in an attachment suit. Meyer pleaded, — 1, The general issue; 2, Accord and satisfaction, that, after the promise and before suit, Meyer, at the plaintiffs' request, procured Gallagher to give them a mortgage on a lot and stock of goods, which they accepted in satisfaction and discharge of the undertaking; 3, Release from

damages, by proceedings by Blakemore Brothers & Co. in Gallagher's bankruptcy; and, 4, Payment, with notice that he would offer in evidence said bankruptcy proceedings and the chancery suit foreclosing the mortgage. The plaintiffs traversed the second, third, and fourth pleas.

The plaintiffs' evidence showed that Gallagher owned a plantation near Vicksburg, the gin-house on which was burned while covered by insurance to the amount of $4,500 in the Mechanics' and Traders' Insurance Co., in New Orleans. Henry Verdelet, to whom Gallagher was indebted $5,700 for the purchase-money of the plantation, sued him by attachment in New Orleans, and garnished the insurance company. To release the fund, it was necessary for Gallagher to give a bond with good resident sureties. Being unknown in New Orleans, he applied to Meyer & Kahn, to whom he was indebted, to get some one there to sign for him; and they wrote to their correspondents, Blakemore Brothers & Co., with whom Gallagher was then unacquainted. On Jan. 22, 1873, Blakemore Brothers & Co. informed them by letter that they had requested their attorneys to write about the Gallagher claim. On the day previous, the attorneys, Walker & Son, had written stating the particulars of the suit, and asking Meyer & Kahn to send a statement of their account against Gallagher, with an order from him on the insurance company for the money. On January 22, Meyer & Kahn wrote Blakemore Brothers & Co.: "We own your two favors of yesterday. Mr. Gallagher is going down, and if he wants you to go his bond for him, you may consider it as done for us, and we will indemnify you if need be." Gallagher went to New Orleans. Blakemore Brothers & Co. became sureties on his bond, collected the insurance money, and, on January 27, remitted it to Meyer & Kahn. Afterwards, they twice wrote, asking Meyer & Kahn to send them a first mortgage or an indemnity bond, to secure them in their bond for Gallagher. On Feb. 10, 1873, a few days subsequent to the last letter, Gallagher executed to Blakemore Brothers & Co. a mortgage on a lot and house and stock of goods therein, to secure them against liability on the bond. Judgment was rendered on the bond against Gallagher and Blakemore Brothers & Co., and they in-

curred expense in defending the suit and compromising the judgment, of all which Meyer & Kahn had due notice. The plaintiffs also proved the items of the following amended bill of particulars filed on the day of the trial, June 14, 1876: —

| | |
|---|---:|
| Amount paid to Verdelet in discharge of judgment for $5,733 . . . . . . . . . . . . . . . . . . . . . . | $3,000.00 |
| Costs in suit against Gallagher . . . . . . . . . . . | 144.00 |
| Costs in suit against Blakemore Brothers & Co., as sureties, | 75.00 |
| Attorneys' fees paid to Walker & Son . . . . . . . . | 300.00 |
| | $3,519.00 |
| Interest 6 per cent to June 13, 1876, 2 years 1½ months . . | 446.00 |
| | $3,965.00 |

| | | |
|---|---:|---:|
| Attorneys' fees to Buck & Clark on foreclosure of mortgage . . . . . . . . . . . . . . . . | $300.00 | |
| Deposit for costs . . . . . . . . . . . . . . | 10.00 | |
| Additional clerk's costs paid . . . . . . . . | 21.00 | |
| Commissioner O'Reilly's fees paid . . . . . . | 25.00 | |
| Printing fee . . . . . . . . . . . . . . . . | 9.00 | |
| | $365.00 | |
| Interest 6 per cent, from June, 1875, 1 year . . | 20.00 | |
| | | $385.00 |

| | | |
|---|---:|---:|
| Total . . . . . . . . . . | | $4,350.00 |
| *Contra :* | | |
| By proceeds of mortgage . . . . . . . . . | $2,000.00 | |
| Interest 6 per cent, from June, 1875 . . . . . | 120.00 | |
| | | 2,120.00 |
| Balance due the plaintiffs . . . . . . . . | | $2,230.00 |

The defendant Meyer, in his own behalf, testified to an interview had by him before the mortgage was given, on the subject of indemnity, with M. H. Blakemore, who was dead when the trial took place. He also introduced the record from the United States District Court for Mississippi, *In re F. Gallagher,* in bankruptcy, which showed that Gallagher having

been adjudicated a bankrupt on Nov. 29, 1873, and soon thereafter died, Blakemore Brothers & Co. filed their proof of secured debt against his estate, and a petition against O'Reilly, his assignee in bankruptcy, in which, stating the proceedings in New Orleans, the execution of the mortgage and the sale by the assignee of the mortgaged goods for $350 or $450, they asked that the assignee be authorized to release to them all interest in the real estate, in consideration that they should release to him all claim against the proceeds of the goods and the bankrupt's other estate, and consent to look to the real property alone for satisfaction. The assignee answered admitting the allegations, and on the same day the order was made authorizing the releases. The defendant also introduced the record in the suit of *William T. Blakemore et al.* v. *F. Gallagher's Heirs*, which disclosed that on Sept. 12, 1874, Blakemore Brothers & Co. filed a bill in the Chancery Court of Warren County, Mississippi, against said heirs to foreclose the mortgage on the real estate, and on April 7, 1875, it was foreclosed. O'Reilly, the commissioner, on April 24, 1875, sold the property to Blakemore Brothers & Co. for $2,000. The sale was confirmed and a deed executed.

In rebuttal, the plaintiffs reintroduced one Clark, who, having in his former examination on a previous day of the trial fixed April, 1875, as the date when he discovered or was reminded of the fact that Meyer & Kahn were ultimately liable to Blakemore Brothers & Co., now testified that, by an examination of his correspondence, he finds the date is December, 1874, immediately after the order in the Bankrupt Court; he also explained why no counsel fees appeared in the proof of debt, while $500 were claimed in the petition, and $600 in the present suit; and further testified that nothing was done under the order of the Bankrupt Court, either by the assignee or Blakemore Brothers & Co. The releases were never made. To the introduction of each of these statements the defendant objected when it was offered in evidence, and on the overruling of his objections excepted.

For the plaintiffs the court gave the following among other instructions: —

"2. That the plaintiffs are entitled to recover, unless the de-

fendant has been discharged from that obligation " (the contract of indemnity), " and the alleged discharge being affirmative matter brought forward by the defendant, in order to avoid his original undertaking, the burden of proof is upon him to prove it to the satisfaction of the jury by a preponderance of evidence. If, therefore, you find there has been no such discharge, or even if your minds are in equipoise upon the subject, your verdict should be for the plaintiffs.

" 3. That no presumption of law arises that the plaintiffs, in accepting the mortgage from Gallagher, intended to, or did discharge the defendant from his obligation to hold them harmless. And though you may believe that when the mortgage was given both parties believed it amply sufficient to secure the plaintiffs against the bond in New Orleans, and that the plaintiffs, or M. H. Blakemore for them, accepted it under such belief, yet such acceptance did not operate to discharge the defendant from liability on his letter, unless it was understood and agreed at the time that he was so discharged. The plaintiffs had the right to take the mortgage as cumulative security ; and it devolves upon the defendant to show by affirmative evidence, other than the mere execution and delivery of the mortgage, that it was not taken as such cumulative security, but that it was agreed that it should be in absolute discharge of his liability.

" 4. That you, the jury, are the sole judges of the credibility of witnesses and the weight of evidence ; but you should be circumspect in the consideration of evidence given by either side, which it is impossible, in the nature of things, for the other side to disprove, — such as conversations or transactions with one deceased,— and give to such evidence only such weight as, in view of the interest of the witness and all the circumstances, you may deem it fairly entitled to.

" 6. That the plaintiffs' right of recovery is not affected by the value of the property mortgaged at the time the mortgage was given. They had no right to proceed upon the mortgage until they were actually damnified by the payment of the money on the bond in New Orleans.

" 7. That unsworn pleadings in another suit or proceeding are not evidence against the plaintiffs of any admissions or decla-

rations of the facts contained therein.  Such admissions or declarations are the mere acts of the counsel preparing such pleadings, especially where they have never been seen or signed by the party.  Therefore the jury will not pay any attention to any admissions or statements of the plaintiffs' rights, or of the amount due to or claimed by them in the pleadings in the Bankrupt Court or the Chancery Court of Warren County, given in evidence ; but if they find for the plaintiffs, they will determine the amount due them by the evidence given in the cause on trial, unless the jury believe from the evidence that the plaintiffs knew of such admissions, and ratified them by act or word ; but the pleadings themselves do not *per se* conclude the plaintiffs as to the amount of their debt.  Neither should the jury give any consideration to the proceedings in the Bankrupt Court, as affecting the plaintiffs' right of recovery, if they find from the evidence that the compromise authorized by said proceedings was never carried into execution.

" 8. If the jury find for the plaintiffs, they should find the amounts paid out by them by reason of their suretyship, with six per cent interest from the dates of payments, deduct therefrom the net proceeds of the property sold under the mortgage, with like interest from day of sale, and then ascertain the amount which the plaintiffs are entitled to recover ; and will then say, by their verdict, ' We, the jury, find for the plaintiffs, and assess their damages at ' so much, mentioning the amount."

The defendant excepted to the granting of each of these instructions.

The defendant asked the following among other instructions : —

" 4. If the jury believe from the evidence that, in accordance with their agreement in the letter sued on, Meyer & Kahn offered to execute to the plaintiffs their indemnifying bond, and that the plaintiffs refused to accept the same, and insisted on other security, and that thereupon the defendant procured the mortgage from Gallagher, then the jury are authorized to infer that the defendant was discharged from his original agreement contained in the letter."

This instruction the court refused, and the defendant excepted.

The jury found for the plaintiffs, and assessed their damages at $2,230 ; and for that amount the court rendered judgment against the defendant, who, on the overruling of his motion for a new trial, excepted, took this writ of error, and assigned for error, overruling the objections to the testimony of Clark ; giving the plaintiffs' instructions numbered 2, 3, 4, 6, 7, and 8 ; refusing the fourth instruction asked by the defendant ; and overruling the motion for a new trial.

*Birchett & Gilland*, for the plaintiff in error.

1. The testimony of Clark in reference to his correspondence should have been excluded.   1 Greenl. Evid. § 88.

2. The evidence shows an accord and satisfaction.   The verdict is wrong.

3. Under any view, the verdict is too large by $162.36, costs in the attachment suit against Gallagher and interest thereon alleged to have been paid by Blakemore Brothers & Co.

4. The verdict is too large by the further sum of $600, counsel fees alleged to have been paid by Blakemore Brothers & Co., which are not recoverable as damages in a case like this. *Armstrong* v. *Percy*, 5 Wend. 535; *Gadsden* v. *Bank of Georgetown*, 5 Rich. (S. C.) 336; *Leffingwell* v. *Elliott*, 10 Pick. 204; *Turner* v. *Miller*, 42 Texas, 418.

5. The plaintiffs' fourth instruction is wholly inapplicable to the facts.

6. Meyer & Kahn were mere sureties for Gallagher.   *Kingsley* v. *Balcombe*, 4 Barb. 131; *Carville* v. *Crane*, 5 Hill (N. Y.), 483; *Greene* v. *Creswell*, 2 P. & Dav. 430, and 10 Ad. & El. 453; 9 Ired. (N. C.) 10; 1 Speers (S. C.), 4; 1 Stew. (Ala.) 51; Browne on the Statute of Frauds, §§ 152, 258; *Bissig* v. *Britton*, 59 Mo. 204.

7. Blakemore Brothers & Co. are bound by the proceedings and decree of the United States District Court.   U. S. Rev. Sts. § 5061; Rule 20, General Orders in Bankruptcy.   A contract in writing was made between them and the assignee, the consideration of which is sufficient to uphold it.   There were mutual promises.   1 Parsons on Contracts, 373.   Prevention of litigation and mutual compromise were also considerations

therefor. 1 Parsons on Contracts, 363. The promise in writing of the assignee to release his interest in the real estate was also a sufficient consideration. 1 Parsons on Contracts, 362. It is a contract of record, and needs no consideration to make it binding. Chitty on Contracts, 2, 3. The assignee can enforce the contract at any time.

8. It is not necessary for that agreement or contract to be carried into execution in order to release Meyer. 1 Selwyn N. P. 407; *Polak* v. *Everett*, 1 Q. B. D. 669. The effect of that contract was a question of law for the court, and not of fact for the jury; and therefore the assignment of error as to Clark's testimony is well taken, and the plaintiffs' second and seventh instructions should have been refused.

9. By reason of the proceedings and decree in the United States District Court, Meyer is discharged from all liability to Blakemore Brothers & Co., for he has a right to be substituted to their rights against Gallagher's estate, on payment of the debt, and by their active interference they have released that estate. 2 Addison on Contracts, 153, § 1134; Chitty on Contracts, 528; *Boschert* v. *Taggart*, 72 Penn. St. 372; 3 Minn. 17; *State Bank* v. *Edwards*, 20 Ala. 512; *Ferguson* v. *Turner*, 7 Mo. 497; 8 S. & R. 452; 16 S. & R. 252; *Dixon* v. *Ewing*, 3 Ohio, 280; *Jones* v. *Bullock*, 3 Bibb (Ky.), 467; 3 Ga. 239, 405; 8 Pick. 121; *Hubbell* v. *Carpenter*, 5 Barb. 520.

10. The release is not of a fund, but of the person of the assignee. *McCollum* v. *Hinckley*, 9 Vt. 143.

11. But if the court should hold that it was only a fund released, still Meyer is discharged *in toto;* for it was by the active interference of the creditors that the release was made, and therefore the burden of proof is on them to show the value of the fund; and if they fail to prove it, or it is incapable of being ascertained, the surety is discharged *in toto*. In this case they offered no proof of the value of the fund, and, indeed, the value of it is incapable of being ascertained. *Moss* v. *Pettingill*, 3 Minn. 217; *Sherraden* v. *Parker*, 24 Iowa, 28; *Neff's Appeal*, 9 Watts & Serg. 36; *Holt* v. *Bodey*, 18 Penn. St. 207.

12. The plaintiffs' eighth instruction is not in accordance with § 2282 Code 1871, and ought to have been refused.

13. Replying to the brief for the defendants in error, the counsel cited and reviewed 5 How. (Miss.) 631 ; 40 Md. 141 ; 2 Daniel on Negotiable Instruments, § 1328 ; *O'Hara* v. *Haas,* 46 Miss. 374 ; *United States* v. *Hodge,* 6 How. (U. S.) 279 ; *Polak* v. *Everett,* 1 Q. B. D. 669 ; *Ransom* v. *Cothran,* 6 S. & M. 167 ; *Miller* v. *Ewing,* 8 S. & M. 421 ; *Jones* v. *Hunter,* 4 How. (Miss.) 342 ; *Bright* v. *Ross,* 11 S. & M. 289 ; 8 S. & M. 208 ; 27 Miss. 242 ; *Kelly* v. *Brown,* 32 Miss. 202 ; *Phipps* v. *Nye,* 34 Miss. 330, 338 ; 40 Miss. 331 ; 45 Miss. 694.

*John D. Gilland* argued the case orally.

*Miller & Crutcher,* on the same side.

*Buck & Clark,* for the defendants in error.

1. Whether this mortgage was taken in discharge of the obligation of Meyer & Kahn was a simple question of fact, which was submitted, under proper instructions, to the jury, who properly found for the plaintiffs. *Brengle* v. *Bushey,* 40 Md. 141 ; s. c. 17 Am. Rep. 586 ; *United States* v. *Hodge,* 6 How. (U. S.) 279 ; *Wade* v. *Stanton,* 5 How. (Miss.) 631 ; 2 Daniel on Negotiable Instruments, § 1328.

2. The second position of the defence rests upon the proceedings in the Bankrupt Court. Here opposing counsel entirely misapprehend our position. We simply deny that there was any " composition with Gallagher's assignee," and assert that the whole argument for the plaintiff in error in support of this position is based upon the false premise that there was a release either of Gallagher's assignee or of his estate. The argument is reducible to the proposition that in substance or effect the proceedings in the Bankrupt Court amounted to an accord and satisfaction between the creditor and the principal debtor, by which the debt was extinguished and the surety released.

(1.) " Accord executed is satisfaction ; accord executory is only substituting one cause of action in the room of another, which might go on to any extent." *Lynn* v. *Bruce,* 2 H. Bl. 317. " It is substantially another agreement between the parties in satisfaction of the former one, and also an execution of the latter agreement." 2 Parsons on Contracts, 681 ; Addison on Contracts, 1072. These rules, with certain familiar

limitations, found in the authorities cited above as well as elsewhere, have been approved by this court in a number of cases. *Young* v. *Power*, 41 Miss. 197, 206 ;. *Guion* v. *Doherty*, 43 Miss. 538; *Pulliam* v. *Taylor*, 50 Miss. 251, 257 ; *Whitney* v. *Cook*, 53 Miss. 551. It is clear, in view of these authorities, that if the assignee had been sued by Blakemore Brothers & Co. upon the original liability of Gallagher to them, he could not have sustained a plea of accord and satisfaction by the introduction of this record from the Bankrupt Court ; and if he could not, then the surety cannot. There was neither an agreement executed in satisfaction, nor an agreement executory, accepted as satisfaction.

(2.) Did the proceedings amount to a contract, which, though falling short of an accord and satisfaction, operated to discharge the plaintiff in error? It is plain that they did not amount to a contract at all. But if they did, then, as applied to that state of case, the principle asserted is that an executory agreement of the creditor to discharge the principal upon a certain condition . operates, *proprio vigore*, to release the surety. The authorities cited do not support this position ; and the contrary has been repeatedly held by this court. The counsel then examined all the authorities cited for the plaintiff in error, and, still accepting the view that the proceedings in the Bankrupt Court amounted to a contract, proceeded to refute the inference that it discharged the plaintiff in error from his undertaking, — citing *Newell* v. *Hamer*, 4 How. (Miss.) 684 ; *Wadlington* v. *Gary*, 7 S. & M. 522 ; *Bank of Tennessee* v. *Govan*, 10 S. & M. 333 ; *Govan* v. *Binford*, 25 Miss. 151 ; *Payne* v. *Bank of Natchez*, 6 S. & M. 24.

(3.) The petition and answer show none of the elements of a contract. There is no promise by either party to do any thing, but only an expression of a willingness on the part of each to do a certain thing, on condition that the other shall do a certain other thing. There is not even what Sharkey, C. J., in *Payne* v. *Bank of Natchez*, *ubi supra*, defined to be " a mere unexecuted promise to contract." 2 Bl. Com. 446 ; 4 Wheat. 197; *Stewart* v. *Reckless*, 4 Zabr. 427 ; *Bank of Tennessee* v. *Govan*, 10 S. & M. 344 ; *Crump* v. *Gerock*, 40 Miss. 765.

3. In the matter of counsel fees and costs, counsel cited

2 Greenl. Evid. §§ 111, 118; 1 Smith Lead. Cas. 70, and notes.

4. New points will not be noticed here. *Doe* v. *Natchez Ins. Co.*, 8 S. & M. 197, 208; *Binns* v. *Stokes*, 27 Miss. 239; *Kelly* v. *Brown*, 32 Miss. 202; *Phipps* v. *Nye*, 34 Miss. 330, 338; *Barney* v. *Scherling*, 40 Miss. 320, 331; *Bell* v. *Flaherty*, 45 Miss. 694.

5. The objection to the evidence of Clark as to his correspondence is not tenable. 1 Greenl. Evid. §§ 436, 437. 1 Greenl. Evid. § 88, only declares the general rule that what is in writing cannot be proved by oral testimony.

6. The granting of the fourth instruction for the plaintiffs, and the refusal of the fourth for the defendant, are not seriously urged as error. The action of the court was manifestly correct in both instances.

7. The plaintiffs' eighth instruction, prescribing the rule by which the jury should compute the amount due the plaintiffs, is not exactly in accordance with § 2282 of the Code, but is a more liberal one for the debtor.

SIMRALL, C. J., delivered the opinion of the court.

Upon the issue on the first special plea, that the mortgage was executed by Gallagher and accepted by the plaintiffs in satisfaction and discharge of the liability of Meyer & Kahn, the jury have found for the plaintiffs. There was evidence tending to prove that it was cumulative, and not in satisfaction of previous liability, and that it was procured to have been given by Meyer & Kahn. There was also an issue on the second special plea, that the composition with the assignee, though authorized by the Bankrupt Court, was not carried out and completed, and that issue was also found for the plaintiffs.

The plaintiff in error has urgently pressed the argument that Maurice Meyer, the defendant, is discharged, because the plaintiffs did not realize all that they might from Gallagher's mortgage. If Meyer & Kahn had paid what the plaintiffs had expended, by reason of their obligation, assumed for their accommodation, they would have had a right to be subrogated to all the securities which Blakemore Brothers & Co. had obtained from Gallagher. Independent of the contract of Meyer

& Kahn to indemnify, the fact of the execution of the bond by the plaintiffs, as sureties for Gallagher, created the relation of principal and surety between the parties, and imposed on Gallagher the liability and duty to save Blakemore Brothers & Co. harmless.

The transaction placed the parties in these responsibilities to each other. Meyer & Kahn had become bound to Blakemore Brothers & Co. to indemnify them. Gallagher was also liable to them, as a principal debtor on the bond; and to relieve his sureties as far as possible, and as a means also of indemnity to Meyer & Kahn, who had become guarantors for him, he executed the mortgage. The mortgage, so far as it could be made productive, would discharge the obligation of Gallagher to Blakemore Brothers & Co., incurred by their signing the bond as his sureties, and would also discharge Meyer & Kahn from their liability. It was incumbent on the mortgagees to administer the security for the best interest of all concerned. They assumed towards Meyer & Kahn the place of trustees in respect of the security. The mortgage was a collateral and cumulative security, which they had obtained from the common debtor of both; and they were subjected to the duties of fidelity and fair dealing, so that, if Meyer & Kahn paid the plaintiffs, they might be relegated to the benefits of the security. The mortgagees could not release or acquit the mortgage without serious injury to Meyer & Kahn. If they voluntarily surrendered or abandoned to another any part of the mortgaged property, *pro tanto* they diminished the value of the security to the defendant. And it would be equitable and just to credit to that extent the party who would be subrogated to the security. *Neff's Appeal*, 9 Watts & Serg. 36; *Holt* v. *Bodey*, 18 Penn. St. 207.

Blakemore Brothers & Co. abandoned to O'Reilly, the assignee of Gallagher the bankrupt, the proceeds of the goods embraced in the mortgage, and which might have been realized if they had pressed their claim. They were bound to use good faith in dealing with the security; and if by non-claim or negligence they have lost part of the fund, shown by the testimony to have been worth from $350 to $450, to that extent they have lost recourse against the defendant. *Wright* v.

*Watt*, 52 Miss. 634. The right of the mortgagees to the goods or their proceeds is as clear as their right to the real estate. They suffered the assignee to retain those proceeds, when it was in their power to have forced an application of them to their debt. They permitted the wrongful conversion by the assignee to continue so long, when they alone could make demand or sue, that their right to reclaim the proceeds was barred by the bankrupt law; and all right to them is also cut off as against the defendant. The loss is chargeable solely to the plaintiffs, and the defendant should not suffer by it.

But it is urged by the counsel for the plaintiff in error that the plaintiffs have lost remedy against the defendant, because they failed to make proof of their debt against the bankrupt Gallagher, and secure a right to share in the distribution of the estate. Is it true that Blakemore Brothers & Co., in order to preserve their rights against the defendant, were obliged to take any steps to collect from Gallagher or from his assignee? The plaintiffs might well stand on the original promise and undertaking of Meyer & Kahn, and look to that to make them whole. The latter have no just ground to complain, when they have voluntarily assumed the position of principal guarantors against loss and damage, that the plaintiffs have not also pursued the bankrupt's estate. The principle has been frequently declared in this court that a creditor does not discharge the surety by failure to make probate of the debt against the estate of the principal.

Can the plaintiffs recover counsel fees paid in the litigation in New Orleans and in this State? The indemnity had reference to a bond in a pending suit in New Orleans. It appears that the plaintiffs employed counsel to defend them when sued on the bond; and, through their negotiations, a judgment for over $5,000 was compromised at $3,000, and that this happy result was obtained by counsel. Gallagher got the insurance money, $4,500, at an outlay of $3,519, actually expended by the plaintiffs. It must be recollected that Walker & Son, the counsel, were already employed when the bond was given; that it was known to Meyer & Kahn. The litigation, it may be presumed, was continued with their con-

sent as well as Gallagher's. It was for their benefit, as the result shows. And the legitimate expenses incident to the plaintiffs' connection with that litigation may fairly be said to have been within the contemplation of the parties to the contract of indemnity. *Baggett* v. *Beard*, 43 Miss. 120. We have already observed that the plaintiffs stood towards Meyer & Kahn very much in the attitude of a trustee in respect of the mortgage; that is to say, the latter had an interest in that security which the plaintiffs were bound to respect. The mortgage was a security given by Gallagher at the suggestion of Meyer & Kahn, and it operated to protect them for payments made by the plaintiffs. A trustee may charge upon the fund all necessary expenses for its maintenance, and for the execution of the trusts charged upon it. The mode of performing the trust was to convert the property into money to discharge the debt. To accomplish that, a suit, decree and sale became necessary; and, to obtain these, costs to officers and fees to solicitors had to be incurred and paid. When, therefore, Blakemore Brothers & Co. have applied the net proceeds of this collateral security to the credit of the defendant's debt, they have performed their duty as trustees of the fund for the defendant.

We find no error in the second, third, fourth, sixth, seventh and eighth instructions for the plaintiffs. The fourth prayer of instruction for the defendant refused by the court was calculated to mislead the jury. In determining whether it was a proper inference that the defendant was discharged by taking the mortgage, the attention of the jury should have been directed to all the testimony bearing on the subject. It was proper for the witness Clark to refer to papers to aid his memory as to dates. Whether any thing was done under the order of the United States District Court authorizing the assignee to make the composition was a matter in issue, and evidence on that point was relevant. The explanations about the records of the United States District Court were not immaterial, nor irrelevant. There is included in the verdict an item for costs in the attachment suit against Gallagher in New Orleans. It is not made to appear that this was improper. The defendant is, however, entitled to credit for the goods

sold by the assignee. These points embrace all the assignments of error except the refusal to grant a new trial. The merits of that motion have been considered in the views hereinbefore expressed.

*Judgment reversed, but judgment here by a remittitur.*